*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0720**

In the Matter of the Civil Commitment of: Charles Walter Bathel

**Filed October 6, 2014
Affirmed
Hudson, Judge**

Hennepin County District Court
File No. 27-MH-PR-13-1046

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Michael C. Hager, Minneapolis, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges the district court's order civilly committing him as a sexually dangerous person (SDP) and sexual psychopathic personality (SPP), arguing that his commitment to the Minnesota Sex Offender Treatment Program (MSOP) was unconstitutional on several grounds. We affirm.

## FACTS

In October 2013, a petition was filed to commit appellant Charles Walter Bathel as an SDP under Minn. Stat. § 253D.02, subd. 16 (Supp. 2013) and SPP under Minn. Stat. § 253D.02, subd. 15 (Supp. 2013). Appellant moved to dismiss the petition, arguing that commitment to MSOP violated substantive due-process rights because it constituted preventive detention after an offender's release from prison. He also argued that committing only sex offenders violated principles of equal protection, that the SDP and SPP statutes were void for vagueness, and that commitment as an SDP or SPP violated double-jeopardy provisions and his right to a jury trial. The district court denied the motion.

The record at appellant's commitment hearing establishes that, in 1985, appellant pleaded guilty to two counts of fourth-degree criminal sexual conduct after he sexually assaulted two 14-year-old boys while they were delivering newspapers. His 26-month sentence was stayed, contingent on his cooperating with and completing sex-offender treatment. A psychological evaluation showed that appellant expressed distressed and distorted thinking, raising serious concerns about future assaultive, destructive, and possible homicidal behavior. The testing psychologist opined that appellant presented a danger to the general public.

While appellant was on probation, his stayed sentence was revoked because he did not comply with court-ordered treatment. Because the remainder of his sentence was not long enough to complete sex-offender treatment in prison, he was required to complete that treatment on supervised release. But while on supervised release, he was terminated

from one treatment program for failure to be accountable for his whereabouts. His conditions of release were restructured, he entered another treatment program, and his sentence then expired.

In 1993, appellant delivered a partially clothed, dead body to the Edina police department. Appellant eventually admitted that he had met the victim, a prostitute, and strangled him, although he later recanted his confession. A jury found appellant guilty of second-degree murder, and he was sentenced to 373 months incarceration; he was scheduled for release in March 2014.

During an interview for the SDP/SPP review report, appellant stated that he had not intended to kill the victim, but when he encountered resistance, he "did what [he] did." According to this report, appellant has current diagnoses of panic disorder without agoraphobia, sexual abuse of a child, and antisocial personality disorder. He has also had diagnoses of relational problem not-otherwise-specified, general anxiety disorder, seizure disorder, bipolar disorder, bipolar affective disorder, mixed anxiety disorder, and claustrophobia. A 2007 assessment indicated an additional diagnosis of pedophilia. A 2008 report noted that appellant had an "uncommon combination of Antisocial and Aggressive (Sadistic) endorsed traits," which "suggest[ed] a cruel, malevolent, and callous individual, capable of extreme acting out."

A Minnesota Department of Corrections (DOC) report noted allegations that appellant sexually assaulted two other offenders while incarcerated, although the alleged victims declined to press criminal charges. The SDP/SPP review report stated that appellant had a "tendency to exaggerate and distort his personal history," denied mental-

health concerns, and denied any sexual relationships since his incarceration, despite contrary records. The results of the Minnesota Sex Offender Screening Tool 3.1 placed appellant at a high risk to reoffend.

After the petition was filed, the two court-appointed examiners, Drs. Ahlberg and Gilbertson, gave their opinions that appellant met the criteria for commitment as an SDP. Dr. Ahlberg opined that appellant also satisfied the requirements for commitment as SPP, while Dr. Gilbertson stated that whether he met those requirements was "arguable." Both examiners stated that appellant had engaged in a course of harmful sexual conduct, had shown conditions of emotional instability, and was, in part, impulsive, lacking customary standards of good judgment. Both examiners also opined that the 1993 murder was sexually motivated and that appellant had inadequate control over his sexual impulses. Dr. Ahlberg diagnosed appellant with sexual abuse of a child, anxiety disorder, and antisocial personality disorder. Dr. Gilbertson diagnosed appellant with personality disorder with passive-aggressive traits. The examiners each reviewed appellant's results on several actuarial instruments; his scores on those tools contributed to their conclusions that he was highly likely to sexually reoffend. Both expressed the opinion that the MSOP was the appropriate placement for appellant.

The district court found, by clear and convincing evidence, that appellant satisfied the requirements for commitment as a sexually dangerous person under Minn. Stat. § 253D.02, subd. 16, and as a sexual psychopathic personality under Minn. Stat. § 253D.02, subd. 15. The district court issued a warrant committing appellant to MSOP. This appeal follows.

**D E C I S I O N**

The district court shall civilly commit a person under the Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities, if it finds clear and convincing evidence that the person is an SDP or SPP, unless that person establishes the existence of a less-restrictive treatment program. Minn. Stat. §§ 253D.01, .07, subd. 3 (Supp. 2013). This court will not set aside a district court's findings of fact unless they are clearly erroneous. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). But the issue of whether the facts satisfy the statutory criteria for commitment is reviewed de novo. *In re Linehan*, 518 N.W.2d 609, 613 (Minn. 1994) (*Linehan I* ).

A person may be committed as an SDP if the person: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct. Minn. Stat. § 253D.02, subd. 16. To commit someone as an SPP, the district court must find (1) a habitual course of misconduct involving sexual matters; (2) an utter lack of power to control sexual impulses; and (3) dangerousness to others. Minn. Stat. § 253D.02, subd. 15; *Linehan I*, 518 N.W.2d at 613.

Appellant does not argue that the district court's findings are defective or that the district court clearly erred by finding that he met the statutory criteria for commitment as an SDP and SPP. Rather, he challenges his commitment as SDP and SPP on several constitutional grounds.

5

First, he argues that sex-offender treatment at MSOP, which implicates his liberty interest, violates substantive due process. He maintains that the state lacks a compelling interest in his preventive detention and should be required to prospectively assess the appropriateness of other forms of treatment before committing him to MSOP. A civilly committed mental patient has a constitutional right to adequate treatment. *Bailey v. Noot*, 324 N.W.2d 164, 167 (Minn. 1982); *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 650 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). But we have held that a right-to-treatment claim is not appropriately raised on appeal of a civil-commitment order. *Navratil*, 799 N.W.2d at 651. "The elements of proof at a commitment trial do not implicate the efficacy of treatment in the MSOP." *In re Civil Commitment of Moen*, 837 N.W.2d 40, 49 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013).

Appellant maintains on review of the district court's civil commitment order that he may challenge the constitutionality of his treatment in MSOP, citing earlier Minnesota Supreme Court cases, *In re Joelson*, 344 N.W.2d 613 (Minn. 1984) (*Joelson I*) and *In re Joelson*, 385 N.W.2d 810 (Minn. 1986) (*Joelson II*). In *Joelson I*, the supreme court remanded a psychopathic-personality commitment for an evidentiary hearing to consider the nature and scope of a new treatment program at the Minnesota Security Hospital as it related to the right to treatment, noting that there had been no opportunity to cross-examine witnesses about the program's merits. *Joelson I*, 344 N.W.2d at 614. After remand, the supreme court affirmed the district court's determination that the new program provided the best treatment available to meet the committed person's needs. *Joelson II*, 385 N.W.2d at 811.

But unlike the *Joelson* cases, the district court was not required to evaluate the appropriateness of a new treatment program for civilly committed persons. Unlike the earlier governing statute, the current statutory scheme plainly requires that a person committed as an SDP or SPP be placed for treatment at the secure MSOP program unless it has been shown that another available program satisfies treatment and public-safety requirements. *Compare* Minn. Stat. § 253B.18, subd. 1 (1982) (providing for placement of a mentally ill and dangerous person in "the Minnesota Security Hospital, a regional center designated by the commissioner or . . . a treatment facility") *with* Minn. Stat. § 253D.07, subd. 3 ("[T]he court shall commit the person to a secure treatment facility unless the person establishes by clear and convincing evidence that a less restrictive treatment program is available . . . ."). *See also* Minn. Stat. § 253D.02, subd. 13 (Supp. 2013) (defining "secure treatment facility" as "the [MSOP] facility in Moose Lake and any portion of the [MSOP] operated by the [MSOP] at the Minnesota Security Hospital," but not including "services or programs administered by the [MSOP] outside a secure environment"). Thus, the district court was following the statutory directive of placing appellant in MSOP unless he satisfied his burden to show a less-restrictive available program meeting his treatment and public-safety requirements. Appellant's reliance on the *Joelson* cases is inapposite.

Further, even if we were to address the merits of appellant's substantive-due-process challenge, we would reject his argument. Minnesota statutes are presumed constitutional, and this court's "power to declare a statute unconstitutional should be exercised with extreme caution." *Assoc. Builders & Contractors v. Ventura*, 610 N.W.2d

7

293, 299 (Minn. 2000). The Minnesota Supreme Court has held that the SDP statute is narrowly tailored to serve the state's compelling interests of assuring public safety and rehabilitating the mentally ill. *In re Linehan*, 594 N.W.2d 867, 873–74 (Minn. 1999) (*Linehan IV*). The supreme court has also upheld the constitutionality of the SPP statute against a substantive due-process challenge. *In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994). Civil commitment "is remedial . . . for treatment purposes and . . . not for purposes of preventive detention." *Call v. Gomez*, 535 N.W.2d 312, 320 (Minn. 1995). Therefore, appellant's substantive-due-process argument fails.

Appellant also raises an equal-protection argument, maintaining he was singled out for disparate treatment from other offenders based on the nature of his status as a sex offender. But the supreme court has rejected this argument. *In re Blodgett*, 510 N.W.2d at 916–17 (holding that SPP statute did not violate equal protection); *In re Linehan*, 557 N.W.2d 171, 187 (Minn. 1986) (*Linehan III*) (reaching same result with respect to SDP statute), *vacated on other grounds*, 522 U.S. 1011, 118 S. Ct. 596 (1997), *aff'd on remand*, 594 N.W.2d 867 (Minn. 1999). Therefore, the district court did not err by denying appellant's motion to dismiss the commitment petition based on equal-protection grounds.

Appellant further argues that his commitment as SDP and SPP subjected him to double jeopardy because "[t]he SDP statute operates as a sentencing statute grafted onto the civil commitment process." But double-jeopardy principles do not apply to appellant's commitment as SDP and SPP; the supreme court has noted that the SDP statute does not require a prior criminal conviction, does not include a scienter

8

requirement, and provides for release if a person is sufficiently rehabilitated. *Linehan IV*, 594 N.W.2d at 871–72 (citing *Kansas v. Hendricks*, 521 U.S. 346, 360–70, 117 S. Ct. 2072, 2081–86 (1997)); *see also Call*, 535 N.W.2d at 320 (rejecting argument that person committed as a psychopathic personality was subject to double jeopardy).

Appellant finally maintains that he should be provided a jury trial in this proceeding because his commitment results in a loss of liberty greater than that imposed under most criminal sanctions. But the supreme court has held that the constitutional right to a jury trial does not apply in civil-commitment proceedings. *State ex rel. Pearson v. Probate Court of Ramsey Cnty.*, 205 Minn. 545, 556–57, 287 N.W. 297, 303 (1939), *aff'd*, 309 U.S. 270, 60 S. Ct. 523 (1940). And "[t]here is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury for such cases." *Poole v. Goodno*, 335 F.3d 705, 710–11 (8th Cir. 2003).

**Affirmed.**